**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| UNITED SERVICES AUTOMOBILE ASSOCIATION<br>a Texas reciprocal inter-insurance exchange,<br><br>Plaintiff,<br><br>v.<br><br>BBVA USA<br><br>Defendant. | ) | Civil Action No. 2:21-cv-311<br><br>JURY TRIAL DEMANDED |

**COMPLAINT**

Plaintiff United Services Automobile Association ("USAA"), by its undersigned counsel, for its Complaint against defendant BBVA USA ("BBVA"), states as follows, with knowledge as to its own acts, and on information and belief as to the acts of others:

## I. THE PARTIES

1. Plaintiff USAA is a reciprocal interinsurance exchange and unincorporated association organized under the laws of the State of Texas having its principal place of business at 9800 Fredericksburg Road, San Antonio, Texas 78288. The USAA family of companies is dedicated to the financial well-being of members of the military and their families through the provision of insurance, banking, investment, and retirement products and services. USAA does business in this judicial district, and through its website at www.usaa.com and USAA Mobile smartphone applications.

2. Defendant BBVA has stated publicly that it recently became a subsidiary of The PNC Financial Services Group, Inc., the parent company to PNC Bank N.A. ("PNC"). On information and belief, BBVA has been working with PNC to integrate its banking systems and customers into PNC's banking systems. For example, according to BBVA, "PNC and BBVA USA have been working together closely to develop a thoughtful integration plan that includes mapping clients to the products and services that best align with their current solutions." BBVA has also stated that "BBVA customers will receive new PNC account and routing numbers at or near conversion, anticipated in October." *See* https://www.bbvausa.com/contact.html.

3. BBVA, PNC, and their common parent company have extensive knowledge of USAA's patents, including through the three suits pending in this Court against PNC for PNC's infringement of USAA patents. BBVA has nonetheless chosen to use USAA's patented technologies without permission for commercial gain.

4. On information and belief, BBVA does business throughout the United States, including in this judicial district. This lawsuit seeks remedies for BBVA's misconduct.

## II. JURISDICTION AND VENUE

5. Subject matter jurisdiction is based on 28 U.S.C. § 1338, in that this action arises under federal statute, the patent laws of the United States (35 U.S.C. §§ 1, *et seq*.).

6. The Court has personal jurisdiction over BBVA because it has substantial, systematic and continuous contacts with this judicial district. BBVA has a regular and established place of business in the State of Texas and in the Eastern District of Texas, including operating dozens of physical branches in this judicial district, and conducts business with customers residing in this judicial district both through its bank branches and its mobile banking services. BBVA has committed acts of patent infringement and, as detailed below, contributed to or induced acts of patent infringement by others in this judicial district. BBVA is registered to do business in Texas and maintains an agent authorized to receive service of process within Texas.

7. Venue is proper under 28 U.S.C. § 1400(b) because BBVA has committed acts of infringement and maintains a regular and established place of business in this judicial district.

8. BBVA occupies many permanent, physical places within this District from which BBVA carries out its business. For example, BBVA has physical branches in the following locations in this District: (1) Denton Main Branch, 1444 W University Dr., Denton, Texas, 76201; (2) Denton South Branch, 729 Fort Worth Dr., Denton, Texas, 76201; (3) Jasper Main Branch, 660 S Wheeler St., Jasper, Texas 75951; (4) Orange Main Branch, 401 N. 16th St., Orange, Texas, 77630; (5) San Augustine Branch, 123 S. Harrison St., San Augustine, Texas, 75972; (6) Tyler Loop 323 Branch, 215 W. Southwest Loop 323, Tyler, Texas, 75701; (7) Carrollton Branch, 3640 N. Josey Ln., Carrollton, Texas, 75007; (8) Hebron Branch, 4033 Old Denton Rd., Carrollton, Texas, 75007; (9) Flower Mound Branch, 2631 Cross Timers Rd., Flower Mound, Texas, 75028; (10) Highland Village Branch, 6400 Morriss Rd, Flower Mound, Texas, 75028; (11) McKinney Branch, Custer Rd, 7001 S. Custer Road, McKinney, Texas, 75070; (12) Stonebridge Branch, 6900 Virginia Pkwy, McKinney, Texas, 75071; (13) Virginia & 75 Branch, 1902 W. Virginia St., McKinney, Texas, 75069; (14) Lewisville Branch, 1101 W. Main St., Lewisville, Texas, 75067; (15) Vista Ridge Branch, 484 E. Round Grove Rd, Lewisville, Texas, 75067; (15) Four Corners Branch, 8860 Fm 423, Frisco, Texas, 75034; (16) Frisco Branch, 8951 Main St., Frisco, Texas, 75034; (17) Stonebriar Branch, 2620 Preston Rd., Frisco, Texas 75034; (18) Gleneagles Branch, 5201 W Park Blvd, Plano, Texas, 75093; (19) Legacy Branch, 2900 Legacy Dr., Plano, Texas, 75023; (20) Plano East Branch, 2521 14th St., Plano, Texas, 75074; (21) Plano Main Branch, 1420 Independence Pkwy, Plano, Texas, 75075; (22) Spring Creek Branch, 848 W. Spring Creek Pkwy, Plano, Texas, 75023; (23) Windhaven Branch, 6001 Windhaven Pkwy, Plano, Texas, 75093; (24) Allen Branch, 806 W. Mcdermott Dr., Allen, Texas 75013. BBVA conducts business from these branches using physical equipment and employees located within the District. For example, on information and belief, each of these branches allows customers to obtain certain banking services from BBVA via in-person appointments with BBVA employees. In addition, each of these locations offers customers the opportunity to conduct banking business via drive-through and/or traditional ATM machines. As a further example, BBVA maintains many ATM locations in this District.

## III. FACTUAL ALLEGATIONS

**USAA's Pioneering Remote Check Deposit Innovations**

9. This is an action for infringement of patents awarded to research and development teams at USAA for their years of work developing and improving technologies that, among other things, allow banking customers to easily and conveniently deposit paper checks into their accounts from their smartphones – wherever they might be in the world. USAA developed these technologies seeking to deliver on its mission to improve the financial security of its members. In its decades of serving the military community, USAA has worked to innovate in serving the needs of its members, including a lifestyle that can make getting to a bank branch difficult, particularly if they are out to sea or deployed outside the United States. USAA's innovations and investments are protected by multiple patents issued by the United States Patent & Trademark Office.

10. USAA has been serving present and former members of the U.S. military and their families since 1922 and is one of America's leading insurance and financial services companies. USAA offers its members a wide range of insurance, banking and investment products and services designed to help them meet their financial security needs. Headquartered in San Antonio, Texas, with offices in several states and Europe, USAA employs more than 33,000 people to provide for the financial well-being of over 12 million members.

11. Unlike traditional banks, which usually maintain a network of brick-and-mortar bank branches or ATMs for customers to use, USAA typically interacts with its members remotely, either by mail, telephone, or with increasing frequency through its usaa.com website or USAA's mobile application. USAA's online and mobile presence is critical to its members' well-being, particularly as USAA's military members are often stationed in distant locations around the world with limited access to traditional banking services.

12. Driven by its mission to serve its members, starting in or around 2004, USAA invested substantial research and development resources into developing and implementing systems and methods that would provide USAA's members with a real-time capability to deposit a financial instrument from just about anywhere. These pioneering systems and methods resulted in a prototype

developed by 2005, and the launch in 2006, of a consumer device remote check deposit system under the name Deposit@Home®. In 2009, USAA launched an application branded as Deposit@Mobile®, which today is available and used worldwide on devices such as iPhones, iPads and Android-based mobile devices. For the first time in banking history, USAA's patented systems allowed customers to deposit checks anytime, anywhere by taking photographs with consumer electronics that consumers actually own or can easily acquire, such as a mobile phone's digital camera. USAA has invested millions of dollars and thousands of employee-hours in the development and implementation of its mobile deposit technologies.

**The Asserted USAA Patents**

13. This action involves six of the patents that protect USAA's investments in its mobile deposit technologies: U.S. Patent Nos. 10,482,432 (the "'432 Patent"), 10,621,559 (the "'559 Patent"), 8,977,571 (the "'571 Patent"), 8,699,779 (the "'779 Patent"), 10,013,605 (the "'605 Patent"), and 10,013,681 (the "'681 Patent") (collectively, "USAA Patents").

14. The '432 and '559 Patents are entitled "Systems and methods for remote deposit of checks," and were invented by Charles Lee Oakes III, Randy Ray Morlen, Bharat Prasad, and Troy Bartlette Huth. The application from which the '432 and '559 Patents derive their effective filing date was filed by USAA on October 31, 2006.

15. The systems and methods taught by the '432 and '559 Patents solve technological problems associated with earlier systems used for capturing images of checks. These innovations allowed USAA, for the first time in banking history, to allow users to transform general purpose consumer devices that they have in their homes or are otherwise easy to acquire into a check image capture device. This had a profound impact on USAA's members and USAA's ability to accept deposit of remote checks, including because it eliminated the need for consumers (many of whom have limited means) to acquire or access specialized check processing equipment to deposit checks remotely.

16. Among other things, the '432 Patent's system and method includes technological solutions to assist the customer in placing the digital camera at a proper distance from the check,

present the photo of the check to the customer after the photo is taken with the digital camera, confirm that the mobile check deposit can go forward after optical character recognition is performed on the check in the photo, and check for errors before submitting the check for mobile check deposit. As another example, the ’559 patent’s device and method performs operations that include, among other things, receiving a digital image depicting at least portion of the check submitted by the user, applying optical character recognition to the digital image, determining an amount for the remote deposit of the check based on the optical character recognition, comparing the determined amount against a customer entered amount, optically reading a magnetic ink character recognition (MICR) line depicted in the digital image, performing duplicate check detection, and determining the image is suitable for creating a substitute check and accepting the digital image. Additional details and improvements to mobile check depositing systems are further described in the patents.

17. The ’571 Patent is entitled “Systems and methods for image monitoring of check during mobile deposit,” and was invented by Michael Patrick Bueche Jr., Bharat Prasad, Minya Liang, Reynaldo Medina, and Charles Lee Oaks III. The application from which the ’571 Patent derives its effective filing date was filed by USAA on August 21, 2009. The ’571 Patent specifically relates to improvements to the remote check deposit process that include, for example, monitoring of the check with respect to a monitoring criterion, a feedback system that instructs the user regarding how to satisfy the monitoring criterion, and an automatic capture system that works in concert with the monitoring system to automatically capture a check image when the monitoring criterion is satisfied. The ’571 Patent’s improvements to mobile check deposit systems are further described in the specifications.

18. The ’779 Patent is entitled “Systems and methods for alignment of check during mobile deposit,” and was invented by Bharat Prasad, Minya Liang, and Reynaldo Medina. The application from which the ’779 Patent derives its effective filing date was filed by USAA on August 28, 2009. The ’779 Patent specifically relates to improvements to the remote check deposit process that include, among other things, projection of an alignment guide in the display of a mobile device,

determination of "whether the image of the check aligns with the alignment guide," automatic capture of the image of the check when the image is determined to align with the guide, and transmittal of the captured image of the check from the camera to a depository via a communication pathway between the mobile device and the depository. This system and method solve discrete, technological problems associated with computing systems used as part of capturing images of checks for deposit on mobile devices. The '779 Patent's improvements to mobile check deposit systems are further described in the specifications.

19. The addition of the '571 and '779 Patent's improvements to remote check deposit systems at USAA and elsewhere significantly increased their efficiency and performance.

20. The '571 and '779 Patents overcame six post-grant review petitions at the Patent Trademark and Appeals Board ("PTAB"). Wells Fargo filed petitions for Covered Business Method ("CBM") review against the '571 Patent (CBM2019-00004) and '779 Patent (CBM2019-00005) in November 2018. The PTAB denied institution of both petitions, finding that the claims of the '571 Patent and '779 Patent were directed to technological features that are novel and unobvious over the prior art and solve technical problems using technical solutions and were thus ineligible for CBM review. Wells Fargo subsequently filed petitions for Inter Partes Review ("IPR") against the '571 Patent (IPR2019-01082) and '779 Patent (IPR2019-01083). On November 24, 2020, the PTAB issued Final Written Decisions in favor of USAA, finding every challenged claim not invalid over the prior art. The PTAB also recently denied institution of IPR petitions against the '571 Patent and '779 Patent filed by Mitek Systems, Inc ("Mitek").

21. The '605 Patent is entitled "Digital camera processing system," and its inventors are Charles Lee Oakes III, Randy Ray Morlen, Michael Frank Morris, Reynaldo Bartlette Medina III, Greg Alan Harpel, Gabriel Glenn Gavia, Bharat Prasad, Frank Kyle Major, and Jeffrey Neal Pollack. The '605 Patent derives its effective filing date from an application that USAA filed on October 31, 2006.

22. The '605 Patent's claims solve discrete, technological problems associated with computing systems used as part of capturing images of checks for deposit, representing new, novel

and useful improvements over the existing and/or patentably distinct means and methods. For example, the inventions in the ’605 Patent’s claims provide improved functionality over conventional techniques, resulting in an enhanced user interface for the customer’s mobile device and enhanced performance. As another example, the ’605 Patent’s claims improve the quality of captured check images by using the mobile device’s display and camera systems to provide instructions to the user while the user is attempting to capture check images. Additionally, the ’605 Patent’s inventions help to make remote check deposit systems commercially viable by reducing error rates, reducing fraud, and improving security, for example, through validation of check information and error detection, and logging of information related to the check, such as an image of the check in a particular format, or authentication of the user. The ’605 Patent’s improvements to mobile check depositing systems are further described in its specification.

23. The ’681 Patent is entitled “System and method for mobile check deposit,” and its inventors are Charles Lee Oakes III, Randy Ray Morlen, Bharat Prasad, and Troy Bartlette Huth. The ’681 Patent derives its effective filing date from an application that USAA filed on October 31, 2006.

24. Among other things, the ’681 Patent’s claims solve discrete, technological problems associated with computing systems used as part of capturing images of checks for deposit, representing new, novel and useful improvements over the existing and/or patentably distinct means and methods. The inventions in the ’681 Patent’s claims provide improved functionality over conventional techniques, resulting in an enhanced user interface for the customer’s mobile device and enhanced performance. For example, the ’681 Patent’s claims improve the quality of captured check images by using the mobile device’s display and camera systems to provide instructions to the user while the user is attempting to capture check images and helping the user place the camera at the proper distance away from the check to capture valid check images for depositing. Additionally, the ’681 Patent’s inventions help to make remote check deposit systems commercially viable by reducing error rates, reducing fraud, and improving security, for example, through validation of check information and error detection, and logging of information related to the check,

such as an image of the check in a particular format, or authentication of the user. The patent's improvements to mobile check depositing systems are further described in its specification.

25. The '605 and '681 Patents overcame four post-grant review petitions at the PTAB. Wells Fargo filed petitions for CBM review against the '605 Patent (CBM2019-00029) and '681 Patent in March 2019 (CBM2019-00028). The PTAB denied institution of both petitions, finding that the claims of the '605 and '681 Patents were directed to technological features that are novel and unobvious over the prior art and solve technical problems using technical solutions and were thus ineligible for CBM review. Subsequently, Mitek filed petitions for Inter Partes Review ("IPR") against the '605 Patent (IPR2020-01742) and '681 Patent (IPR2020-01650). In March 2021, PTAB denied institution of both petitions, finding no reasonable likelihood that Mitek would prevail in proving any claim of the '605 and '681 Patents unpatentable.

26. Together, the USAA Patents are directed to improved computing systems that enable commercially-viable remote check deposit systems used today by BBVA. The USAA Patents solve technological problems associated with earlier systems used for capturing images of checks. These innovations allowed USAA, for the first time in banking history, to allow users to transform general-purpose consumer devices that they have in their homes or are otherwise easy to acquire into a check-image capture device. This had a profound impact on USAA's members and USAA's ability to accept deposit of remote checks, including because it eliminated the need for consumers (many of whom have limited means) to acquire or access specialized check processing equipment to deposit checks remotely.

27. Prior to USAA's inventions, checks were processed for deposit using specialized check scanning machines, which typically were located in bank facilities or leased to businesses for use in their back offices. High-tech equipment manufacturers sold a variety of check scanning machines that cost up to tens of thousands of dollars.

28. The passage of the Federal "Check 21 Act" in 2003 increased the technical risks associated with check imaging. A report by Alogent entitled "The Client Business Case for Remote

Deposit Capture" explained how, under Check 21, items would be returned due to poor image quality, either on the digital image, or the printed Image Replacement Document (IRD).

29. The deposit of check images requires compliance with certain technical specifications, such as the "Specifications for Electronic Exchange of Check and Image Data," also known as DSTU X9.37-2003: a technical specification published by the Accredited Standards Committee X9, Inc. that spells out the file sequences, record types, and field formats to be used for the electronic exchange of check MICR line, associated check processing data and check images.

30. An industry white paper entitled "Check 21: Controlling Image Quality at the Point of Capture" was published in 2004. The white paper acknowledges that one challenge facing remote deposit capture ("RDC") is that the human eye does not have the ability to distinguish between a check image that meets digital processing criteria and one that does not. For example, the white paper points out that what is an acceptable image to one person may be unacceptable to another. The white paper discussed the importance of ensuring that an acceptable image of a check is captured at the first point of entry to the check clearing process, as a check image with quality issues is likely to be unpayable and represents a liability to the bank. Further, the report identified and discussed basic measurement metrics to ensure that a check image may be successfully cleared. Also in 2004, the FSTC, a financial industry technical group, published a report entitled "Image Quality and Usability Assurance - Phase I Project." The report discussed a number of factors such as image size, skew, lightness/darkness, focus, and noise, among others that can lead to a failed image. Other publications discussing the perceived challenges of remote deposit include statements made in 2005 by CIT Engineering Team, who designs specialized scanners for the RDC process, the RDC process is so delicate that small insights and/or small oversights are what distinguish an outstanding check scanning product from a mediocre one.

31. When USAA introduced its novel technology to the market, it was met with both delight and concern because of its disruptive force. For example, in September 2009, AdAge published a report entitled "How Mobile Technology Is Changing Banking's Future," which observed that "USAA represents the bleeding edge of mobile banking technology" and described

its pioneering system as a "technological development [ ] that allow[s] for deposits by iPhone and mobile payments." As another example, in June 2009, Celent published an article entitled "USAA's Mobile Remote Deposit Capture Initiative." The article stated that mobile RDC is so disruptive that many banks might pass on the idea. The report acknowledged that USAA's mobile RDC provided a compelling competitive advantage over other banks.

32. By facilitating and improving remote mobile deposit, the innovations of the USAA Patents facilitate significant cost savings and provide many other financial benefits to banks. For example, in 2011, NCR published a white paper entitled "Mobile Remote Deposit Capture." The white paper reported that the average cost of processing a paper check transaction at a bank branch is $3.75, and that a mobile deposit costs just $0.14.

33. As another example, in 2015, Celent published a report entitled "State of Remote Deposit Capture 2015 - Mobile Is the New Scanner." The abstract of the report observed that mobile RDC was becoming the alternative to specialized check scanners, with banks racing to offer mobile RDC, which Celent predicted would have a profound effect on the branch channel. The report also observed that USAA's systems result in a substantial improvement over the existing marketplace of complex, expensive check scanning machines and that by the date of the report mobile check image capture users outnumbered those using specialize desktop devices by more than 40 to 1. As another example, in 2016, an article entitled "Mobile Check Deposits - Pro Tips to Ensure They Go Smoothly" was published by an industry technology analyst on nerdwallet.com. The article acknowledged that mobile check deposit had become the most popular feature of mobile banking, estimating that there are about 87 million people in the U.S. depositing checks using mobile check deposit.

34. In a 2017 report entitled "2017 Mobile Deposit Benchmark Report," a leading technology consulting firm reiterated the importance of the autocapture feature to mobile deposit. Among other things, it stated, "auto-capture must now be treated as a must-have feature across all strata of the financial services industry."

35. An industry expert hired by Wells Fargo testified in prior proceedings that the patented auto-capture techniques are now "widely acknowledged as the foundation for a successful mobile check deposit."

**BBVA's Infringement**

36. BBVA is a large full-service consumer and commercial banking provider in the United States with a substantial presence in mobile banking. BBVA's website touts its mobile check deposit services as being recognized as "one of the top five banks in mobile deposit user experience."

37. BBVA's remote deposit capture systems, including but not limited to *BBVA Mobile Deposit®* and *BBVA Compass Mobile Check Deposit*, are referred to herein, along with any other infringing instrumentalities that include similar functionality, as "BBVA Mobile Deposit." BBVA states that "Mobile Check Deposit allows [users] to quickly and easily deposit checks with [their] mobile phone[s]" and that depositing checks with BBVA mobile banking apps is "quick, easy, and secure."






38. Upon information and belief, BBVA also promotes BBVA Mobile Deposit with video advertisements, including commercials specifically touting mobile deposit, and has offered special promotions to customers to encourage them to try mobile deposit.

39. BBVA receives mobile check deposits from customers who, for example, download the BBVA application for iPhone or Android devices and use the application and device as instructed by BBVA, including for example as detailed on BBVA's website and in its user guide.

40. Upon information and belief, BBVA did not release Mobile Deposit to customers until years after USAA had already implemented and released its Deposit@Home and Deposit@Mobile-branded solutions to widespread adoption, demonstrating the commercial viability of USAA's patented technology.

41. BBVA had actual knowledge before the filing of the Complaint, including because USAA has sent two letters to BBVA putting it on notice of the patents, on December 18, 2017 and on October 7, 2020. The second letter referred specifically to the two jury verdicts against Wells Fargo for infringement of USAA's remote check deposit patents, including the '571, '605, and '681 (parent to the '432 and '559 Patents) Patents, and also referring specifically to the '779 Patent. BBVA did not respond to either letter.

42. Moreover, since at or shortly after the time of its issuance, the USAA Patents have been publicly known and widely publicized in the banking industry, including in major publications read by BBVA employees. For example, the *American Banker*, a publication which describes itself as "the essential resource for senior executives in banking and financial services, keeping its users updated on vital developments and focusing sharply on their most important concerns" ran an article, published in January 2020, discussing the jury verdict finding Wells Fargo liable for infringing the USAA Patents and awarding USAA $102.8 million in past damages. The article reported "Wells Fargo has lost a [] mobile deposit patent lawsuit brought against it by USAA," noted that "other banks should be on alert if they use the same technology," and specifically referenced USAA's Deposit@Mobile product. Similar articles appeared in other major publications such as *Bloomberg, S&P Global*, and *Business Insider*.

43. Upon information and belief, BBVA monitors these industry publications. For example, BBVA's website has specifically touted and cited coverage from the *American Banker*, *Bloomberg*, *Business Insider*, and *S&P Global*.

44. In addition to the widespread coverage of USAA's lawsuits against Wells Fargo, USAA's Deposit@Mobile® technology has been well-known and publicized for years, and USAA receives widespread acclaim for its pioneering innovations in mobile deposit. For example, a 2020 report by Javelin Strategy and Research named USAA "as an overall 'Leader' in both mobile and online banking," and also evaluated BBVA. Upon information and belief, BBVA is aware of this and other acclaim for USAA's Deposit@Mobile® products, including because it was widespread in the industry and that BBVA's website touts its own mobile banking app being recognized by Javelin Strategy.

45. USAA is further informed and believes that BBVA has actual and constructive knowledge of the USAA Patents as a result of its awareness of USAA's Deposit@Mobile® products and USAA's patent marking. For example, USAA marks its Deposit@Mobile® products pursuant to 35 U.S.C. § 287 through the USAA mobile application. As a further example, the Deposit@Mobile® mobile application contains a "United States Patents" section also specifically listing the USAA Patents by number.

46. As another example, upon information and belief, BBVA has actual and constructive knowledge of the USAA Patents because it is part of The PNC Financial Services Group, Inc. In November 2020, The PNC Financial Services Group, Inc. announced that it would acquire BBVA's parent company, and then in June 2021 announced that the acquisition had closed. Throughout this time, USAA's claims against PNC for infringement of the same patents at issue in this case were pending and the subject of public securities disclosures by PNC. Accordingly, on information and belief, the details of the infringement allegations were either already known or became known to BBVA as a result of due diligence and as a result of the acquisition itself. For example, on information and belief, BBVA has been working with PNC since at least the June 2021 closing to integrate its banking systems and customers into PNC's banking systems. According to BBVA,

"PNC and BBVA USA have been working together closely to develop a thoughtful integration plan that includes mapping clients to the products and services that best align with their current solutions." BBVA has also stated that "BBVA customers will receive new PNC account and routing numbers at or near conversion, anticipated in October." *See* https://www.bbvausa.com/contact.html.

47. Further, to the extent that BBVA contends it lacked actual knowledge of any aspect of its infringement of the USAA Patents before the time of service of this Complaint, it was also willfully blind by deliberately avoiding an investigation. Further, BBVA has additional actual knowledge of its infringement of the USAA Patents by virtue of this Complaint.

48. As detailed below, BBVA's conduct with respect to Mobile Deposit constitutes willful infringement of the USAA Patents. BBVA's use of the USAA Patents is not licensed or authorized by USAA in any way.

49. BBVA has profited, and continues to profit, including by providing its infringing mobile deposit service to millions of BBVA customers without USAA's permission and without any compensation to USAA, materially harming USAA and its members.

## IV. FIRST CLAIM FOR RELIEF – '432 PATENT

50. USAA re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

51. The '432 Patent, entitled "Systems and methods for remote deposit of checks" was duly and legally issued on November 19, 2019. A true and correct copy of the '432 Patent is attached as Exhibit A.

52. USAA owns by assignment the entire right, title and interest in and to the '432 Patent, including the exclusive right to seek damages for past, current and future infringement thereof. USAA is informed and believes, and on this basis alleges, that BBVA, agents of BBVA, and/or third parties acting under BBVA's direction and control, have committed and continue to commit acts of direct infringement of one or more claims of the '432 Patent literally and/or under the doctrine of equivalents, by making, using, selling, offering to sell and/or importing into the United States,

BBVA Mobile Deposit. Further, BBVA controls the infringing system as a whole and obtains benefits from it.

53. For example, the BBVA Mobile Deposit system through which BBVA receives deposits includes a customer's mobile device including BBVA's downloaded app, which BBVA provides to control check deposit by causing the customer's mobile device to perform various functions such as instructing the customer to have a digital camera take a photo of a check. This is illustrated, for example, in the following illustrative images from BBVA's website and marketing materials.

OVERVIEW

### Deposit checks whenever, wherever

No more driving to the branch, waiting in line, or running to the ATM. Mobile Check Deposit allows you to quickly and easily deposit checks with your mobile phone. You don't even have to leave your house.*

Available for iPhone® and Android™

Download App

Available on the App Store

ANDROID APP ON Google play




HOW TO MAKE A MOBILE DEPOSIT

## Securely deposit a check directly into your account in 4 easy steps:

1. Sign in to the BBVA Mobile Banking App
2. Tap the three lines in the upper right hand corner and select 'Deposit Checks' from the Main Menu
3. Follow the instructions on how to enter deposit information and how to take a picture of the front and back of your check.
4. You may also deposit multiple checks in a single deposit session, just as if you were at an ATM. Simply take a photo of the front and back of each check as instructed.




54. As another example, BBVA Mobile Deposit gives an instruction to assist in placing the digital camera at a proper distance away from the check for taking the photo, including as depicted in the below screenshot from BBVA's Mobile Deposit application.



55. In addition, BBVA Mobile Deposit presents the photo of the check to the customer after the photo is taken with the mobile phone's digital camera.









56. BBVA Mobile Deposit causes the customer's mobile device to confirm that the mobile check deposit can go forward after optical character recognition ("OCR") is performed on the check in the photo. For example, if the customer-entered amount and the OCR-determined amount do not match, the BBVA Mobile Deposit application will display an error message stating: "The amount you entered did not match the amount detected. Please re-enter amount and retake photo."




57. BBVA Mobile Deposit also checks for errors before the submitting step. For example, if the customer does not endorse on the back of the check pursuant to the instructions, the

BBVA Mobile Deposit application will display an error message stating: "No endorsement found. Please retake photo of correctly endorsed check. Ensure good lighting and focus."




58. BBVA also is inducing infringement of the '432 Patent, in violation of 35 U.S.C. § 271(b), including by knowingly encouraging or aiding third parties to make, use, sell or offer to sell BBVA Mobile Deposit in the United States, or to import BBVA Mobile Deposit into the United States, and/or in violation of 35 U.S.C. § 271(f)(1), by supplying or causing to be supplied BBVA Mobile Deposit in or from the United States, without license or authority from USAA, with knowledge of or willful blindness to the fact that BBVA's actions will induce others to directly

infringe the ’432 Patent. BBVA actively encourages, directs, and controls third parties, including its end users, to make and/or use BBVA Mobile Deposit in an infringing manner, including through BBVA’s website, advertisements, documentation/instructional material, customer support, application and feature descriptions, and in-application instructions. BBVA has intentionally aided and encouraged third parties, including its end users, to use BBVA Mobile Deposit in the United States in a manner that it knows would infringe or have a high probability of infringing the ’432 Patent, with the specific intent that those performing the acts infringe the ’432 Patent.

59. BBVA is contributorily infringing the ’432 Patent in violation of 35 U.S.C. § 271(c), by selling, offering to sell, and/or importing into the United States, and/or in violation of 35 U.S.C. § 271(f)(2), by supplying or causing to be supplied in or from the United States, BBVA Mobile Deposit for use in infringing the ’432 Patent, constituting a material part of the invention, knowing BBVA Mobile Deposit to be especially made or especially adapted for use in infringing the ’432 Patent. BBVA Mobile Deposit is not a staple article or commodity of commerce suitable for substantial non-infringing use.

60. As a result of BBVA’s infringement of the ’432 Patent, USAA has been damaged. In addition, BBVA’s infringing acts and practices have caused and are causing immediate and irreparable harm to USAA. USAA is entitled to recover for damages sustained as a result of BBVA’s wrongful acts in an amount yet to be determined and to receive such other and further relief, including equitable relief, as this Court deems just and proper.

61. USAA is further informed, and on this basis alleges, that BBVA’s infringement of the ’432 Patent has been and continues to be deliberate and willful, and, therefore, this is an exceptional case warranting an award of enhanced damages for up to three times the actual damages awarded and attorney’s fees to USAA pursuant to 35 U.S.C. §§ 284-285. As noted above, BBVA has had knowledge of the ’432 Patent and its infringement thereof, and yet has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for USAA’s patent rights. Thus, BBVA’s infringing actions have been and continue to be consciously wrongful.

## V. <u>SECOND CLAIM FOR RELIEF – ’559 PATENT</u>

62. USAA re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

63. The ’559 Patent, entitled “Systems and Methods for Remote Deposit of Checks,” was duly and legally issued on April 14, 2020. A copy of the ’559 Patent is attached as Exhibit B.

64. USAA owns by assignment the entire right, title, and interest in and to the ’559 Patent, including the exclusive right to seek damages for past, current and future infringement thereof.

65. USAA is informed and believes, and on this basis alleges, that BBVA, agents of BBVA, and/or third parties acting under BBVA’s direction and control, have committed and continue to commit acts of direct infringement of one or more claims of the ’559 Patent literally and/or under the doctrine of equivalents, by making, using, selling, offering to sell and/or importing into the United States, BBVA Mobile Deposit. Further, BBVA controls the infringing system as a whole and obtains benefits from it.

66. For example, BBVA Mobile Deposit includes a computing device for processing a remote deposit of a check, which includes memory having stored thereon executable instructions that, when executed by the first processing circuitry, cause it to perform operations including to receive a digital image of a check, the digital image transmitted using a mobile device associated with an image capture device, the digital image being captured by the image capture device. This is illustrated, for example, in the following illustrative images from BBVA’s website and marketing materials.

> **2. Mobile Deposit®**
>
> Subject to the following terms and conditions (collectively, this "**Section**"), you may use this Service to make deposits to any of your Mobile Accounts from home or other remote locations by scanning checks and transmitting the images and associated deposit information to BBVA or its designated processor.

OVERVIEW

## Deposit checks whenever, wherever

No more driving to the branch, waiting in line, or running to the ATM. Mobile Check Deposit allows you to quickly and easily deposit checks with your mobile phone. You don't even have to leave your house.*

Available for iPhone® and Android™

### Download App

Available on the App Store

ANDROID APP ON Google play




## Skip your next trip to the ATM.

Deposit Treasury checks using the BBVA Mobile Banking App. Download or update your Mobile App today.

HOW TO MAKE A MOBILE DEPOSIT

## Securely deposit a check directly into your account in 4 easy steps:

1. Sign in to the BBVA Mobile Banking App
2. Tap the three lines in the upper right hand corner and select 'Deposit Checks' from the Main Menu
3. Follow the instructions on how to enter deposit information and how to take a picture of the front and back of your check.
4. You may also deposit multiple checks in a single deposit session, just as if you were at an ATM. Simply take a photo of the front and back of each check as instructed.



DEMO VIDEO

## Depositing Checks with the BBVA Mobile App






67. As another example, BBVA detects an image format of the digital image, determines that it is stored in a first image format, and coverts that image, wherein an image quality of the first image format is greater than an image quality of the second format.

68. In addition, BBVA Mobile Deposit applies OCR to the digital image, determines an amount of the check based on the OCR applied to the digital image, and compares the amount against a customer-entered amount. For example, if the customer-entered amount and OCR-determined amount do not match, the BBVA Mobile Deposit application will display an error message stating "The amount you entered did not match the amount detected. Please re-enter amount and retake photo," including as depicted in the below screenshot from BBVA's Mobile Deposit application.




69. Further, as another example, BBVA Mobile Deposit optically reads an MICR line depicted in the digital image, and determines a routing number from the optically read MICR line. For example, as shown in the below screenshot, if BBVA Mobile Deposit is unable to optically read the MICR line, it displays an error message stating "Cannot read account data on check. Please retake photo. Ensure Lighting, focus and prevent shadows over the check."


THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND ON WHITE PAPER. THE BACK OF THIS DOCUMENT CONTAINS AN ARTIFICIAL WATERMARK • HOLD AT AN ANGLE TO VIEW
205464
16-1606-1220
Pay Date: 01/15/2021
SEVEN HUNDRED FORTY-TWO DOLLARS AND TEN CENTS
Pay To The Order Of
Pay This Amount
$742.10
CITY NATIONAL BANK
LIBRARY TOWER OFFICE
LOS ANGELES, CALIFORNIA 90071
AUTHORIZED SIGNATURE


Deposit to CHK *2788
Cannot read account data on check. Please retake photo. Ensure lighting, focus and prevent shadows over the check.
CAPTURE CHECK 1
Clear
Amount of Check 1
$ 742.10
Sign the back of your check and write:
For Mobile Deposit Only, BBVA
Account
: Automatic
Front of Check captured
Back of Check captured
Add Another Check
Review

70. Upon information and belief, BBVA performs duplicate detection to avoid mobile deposit of duplicate checks. For example, if a customer attempts to deposit the same check previously deposited, the BBVA Mobile Deposit application will display an error message stating: "Duplicate item found."




71. As another example, BBVA Mobile Deposit determines the digital image is suitable for creating a substitute check and sufficient to go forward with the deposit. For example, BBVA Mobile Deposit provides a confirmation of successful deposit if the check images are sufficient to go forward with the deposit using a substitute check.

72. As an additional example, BBVA Mobile Deposit includes second processing circuitry and a second memory having stored thereon executable instructions that, when executed

by the second processing circuitry, cause the second processing circuitry to perform second operations, including accepting the digital image for check deposit in place of the check depicted in the digital image. For example, BBVA Mobile Deposit provides a confirmation of successful deposit and updates the account balance with the deposit.

73. BBVA is inducing infringement of the ’559 Patent, in violation of 35 U.S.C. § 271(b), including by knowingly encouraging or aiding third parties to make, use, sell or offer to sell BBVA Mobile Deposit in the United States, or to import BBVA Mobile Deposit into the United States, and/or in violation of 35 U.S.C. § 271(f)(1), by supplying or causing to be supplied BBVA Mobile Deposit in or from the United States, without license or authority from USAA, with knowledge of or willful blindness to the fact that BBVA’s actions will induce others to directly infringe the ’559 Patent. BBVA actively encourages, directs, and controls third parties, including its end users, to make and/or use BBVA Mobile Deposit in an infringing manner, including through BBVA’s website, advertisements, documentation/instructional material, customer support, application and feature descriptions, and in-application instructions. BBVA has intentionally aided and encouraged third parties, including its end users, to use BBVA Mobile Deposit in the United States in a manner that it knows would infringe or have a high probability of infringing the ’559 Patent, with the specific intent that those performing the acts infringe the ’559 Patent.

74. BBVA is contributorily infringing the ’559 Patent in violation of 35 U.S.C. § 271(c), by selling, offering to sell, and/or importing into the United States, and/or in violation of 35 U.S.C. § 271(f)(2), by supplying or causing to be supplied in or from the United States, BBVA Mobile Deposit for use in infringing the ’559 Patent, constituting a material part of the invention, knowing BBVA Mobile Deposit to be especially made or especially adapted for use in infringing the ’559 Patent. BBVA Mobile Deposit is not a staple article or commodity of commerce suitable for substantial non-infringing use.

75. As a result of BBVA’s infringement of the ’559 Patent, USAA has been damaged. In addition, BBVA’s infringing acts and practices have caused and are causing immediate and irreparable harm to USAA. USAA is entitled to recover for damages sustained as a result of BBVA’s

wrongful acts in an amount yet to be determined and to receive such other and further relief, including equitable relief, as this Court deems just and proper.

76. USAA is further informed, and on this basis alleges, that BBVA's infringement of the '559 Patent has been and continues to be deliberate and willful, and, therefore, this is an exceptional case warranting an award of enhanced damages for up to three times the actual damages awarded and attorney's fees to USAA pursuant to 35 U.S.C. §§ 284-285. As noted above, BBVA has had knowledge of the '559 Patent and its infringement thereof, and yet has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for USAA's patent rights.

## VI. THIRD CLAIM FOR RELIEF – '571 PATENT

77. USAA re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

78. The '571 Patent, entitled "Systems and methods for image monitoring of check during mobile deposit," was duly and legally issued on March 10, 2015. A true and correct copy of the '571 Patent is attached as Exhibit C.

79. USAA owns by assignment the entire right, title and interest in and to the '571 Patent, including the exclusive right to seek damages for past, current and future infringement thereof.

80. USAA is informed and believes, and on this basis alleges, that BBVA, agents of BBVA, and/or third parties acting under BBVA's direction and control, including BBVA's customers and partners, have committed and continue to commit acts of direct infringement of one or more claims of the '571 Patent, including, for example, Claim 1, literally and/or under the doctrine of equivalents, by making, using, selling, offering to sell and/or importing into the United States, BBVA Mobile Deposit. Further, BBVA controls the infringing system as a whole and obtains benefits from it.

81. For example, BBVA Mobile Deposit includes a software application installed on a mobile device, such as a customer's smartphone, comprising instructions that, when executed by a processor, cause the processor to: monitor an image of the check in a field of view of a camera of a mobile device with respect to a monitoring criterion using an image monitoring and capture module of the mobile device; capture the image of the check with the camera when the image of the check passes the monitoring criterion. This is illustrated, for example, in the following illustrative images from BBVA's website and marketing materials.










Front Image
Center check here and wait,
we'll take the photo for you
BBVA
1:42 / 3:28
BBVA Compass Mobile Banking Depositing Checks
21,188 views • Jun 1, 2016
94
13
SHARE
SAVE
BBVA
BBVA in the USA
5.2K subscribers
SUBSCRIBE


Back Image
Center check here and wait,
we'll take the photo for you
Before taking the picture, endorse the back of
your check with your signature and by writing:
For deposit only, BBVA Compass account # ________
BBVA
1:54 / 3:28

82. As another example, BBVA Mobile Deposit will provide the image of the check from the camera to a depository via a communication pathway between the mobile device and the depository. For example, BBVA Mobile Deposit will provide a confirmation of succesful deposit after a user clicks "Submit" to provide the image of the check to a depository.







83. BBVA is inducing infringement of the '571 Patent, in violation of 35 U.S.C. § 271(b), including by knowingly encouraging or aiding third parties to make, use, sell or offer to sell BBVA Mobile Deposit in the United States, or to import BBVA Mobile Deposit into the United

States, and/or in violation of 35 U.S.C. § 271(f)(1), by supplying or causing to be supplied BBVA Mobile Deposit in or from the United States, without license or authority from USAA, with knowledge of or willful blindness to the fact that BBVA's actions will induce others to directly infringe the '571 Patent. BBVA actively encourages, directs, and controls third parties, including its end users, to make and/or use BBVA Mobile Deposit in an infringing manner, including through BBVA's website, advertisements, documentation/instructional material, customer support, application and feature descriptions, and in-application instructions. BBVA has intentionally aided and encouraged third parties, including its end users, to use BBVA Mobile Deposit in the United States in a manner that it knows would infringe or have a high probability of infringing the '571 Patent, with the specific intent that those performing the acts infringe the '571 Patent.

84. BBVA is contributorily infringing the '571 Patent in violation of 35 U.S.C. § 271(c), by selling, offering to sell, and/or importing into the United States, and/or in violation of 35 U.S.C. § 271(f)(2), by supplying or causing to be supplied in or from the United States, BBVA Mobile Deposit for use in infringing the '571 Patent, constituting a material part of the invention, knowing BBVA Mobile Deposit to be especially made or especially adapted for use in infringing the '571 Patent. BBVA Mobile Deposit is not a staple article or commodity of commerce suitable for substantial non-infringing use.

85. As a result of BBVA's infringement of the '571 Patent, USAA has been damaged. In addition, BBVA's infringing acts and practices have caused and are causing immediate and irreparable harm to USAA. USAA is entitled to recover for damages sustained as a result of BBVA's wrongful acts in an amount yet to be determined and to receive such other and further relief, including equitable relief, as this Court deems just and proper.

86. USAA is further informed, and on this basis alleges, that BBVA's infringement of the '571 Patent has been and continues to be deliberate and willful, and, therefore, this is an exceptional case warranting an award of enhanced damages for up to three times the actual damages awarded and attorney's fees to USAA pursuant to 35 U.S.C. §§ 284-285. As noted above, BBVA has had knowledge of the '571 Patent and its infringement thereof, and yet has deliberately

continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for USAA's patent rights.

## VII. FOURTH CLAIM FOR RELIEF – '779 PATENT

87. USAA re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

88. The '779 Patent, entitled "Systems and methods for alignment of check during mobile deposit" was duly and legally issued on April 15, 2014. A true and correct copy of the '779 Patent is attached as Exhibit D.

89. USAA owns by assignment the entire right, title, and interest in and to the '779 Patent, including the exclusive right to seek damages for past, current, and future infringement thereof.

90. USAA is informed and believes, and on this basis alleges, that BBVA, agents of BBVA, and/or third parties acting under BBVA's direction and control, have committed and continue to commit acts of direct infringement of one or more claims of the '779 Patent literally and/or under the doctrine of equivalents, by making, using, selling, offering to sell and/or importing into the United States, BBVA Mobile Deposit. Further, BBVA controls the infringing system as a whole and obtains benefits from it.

91. For example, BBVA Mobile Deposit is a system for depositing checks, comprising a mobile device with a camera, a display, and a processor configured to project an alignment guide in the display of the mobile device which displays a field of view of the camera. This is illustrated, for example, in the following illustrative images from BBVA's website and marketing materials.

OVERVIEW

## Deposit checks whenever, wherever

No more driving to the branch, waiting in line, or running to the ATM. Mobile Check Deposit allows you to quickly and easily deposit checks with your mobile phone. You don't even have to leave your house.*

Available for iPhone® and Android™

### Download App

Available on the App Store

Android App on Google play




## Skip your next trip to the ATM.

Deposit Treasury checks using the BBVA Mobile Banking App. Download or update your Mobile App today.

DEMO VIDEO

## Depositing Checks with the BBVA Mobile App






92. As another example, BBVA Mobile Deposit monitors an image of a check that is within the camera's field of view and determines whether the image of the check aligns with the alignment guide. BBVA Mobile Deposit provides instructions to users to assist with these steps, inluding, for example, to "Use check front," "Reduce angle of check," and "Move closer." When the image of the check is determined to align with the alignment guide, BBVA Mobile Deposit shows a "Success!" message. This is depicted, for example, in the below screenshots from BBVA's Mobile Deposit application.












93. As another example, BBVA Mobile Deposit automatically captures the image of the check when the image of the check is determined to align with the alignment guide, as described in the following excerpts from an instructional video provided by BBVA.


Front Image
Center check here and wait,
we'll take the photo for you
BBVA
1:42 / 3:28
BBVA Compass Mobile Banking Depositing Checks
21,188 views • Jun 1, 2016
94
13
SHARE
SAVE
BBVA in the USA
5.2K subscribers
SUBSCRIBE


Back Image
Center check here and wait,
we'll take the photo for you
Before taking the picture, endorse the back of
your check with your signature and by writing:
For deposit only, BBVA Compass account # ______
BBVA
1:54 / 3:28

94. As another example, BBVA Mobile Deposit will transmit the captured image of the check from the camera to a depository via a communication pathway between the mobile device and the depository. For example, BBVA Mobile Deposit will provide a confirmation of succesful deposit after a user clicks "Submit" to provide the image of the check to a depository.







95. BBVA also is inducing infringement of the '779 Patent, in violation of 35 U.S.C. § 271(b), including by knowingly encouraging or aiding third parties to make, use, sell or offer to

sell BBVA Mobile Deposit in the United States, or to import BBVA Mobile Deposit into the United States, and/or in violation of 35 U.S.C. § 271(f)(1), by supplying or causing to be supplied BBVA Mobile Deposit in or from the United States, without license or authority from USAA, with knowledge of or willful blindness to the fact that BBVA's actions will induce others to directly infringe the '779 Patent. BBVA actively encourages, directs, and controls third parties, including its end users, to make and/or use BBVA Mobile Deposit in an infringing manner, including through BBVA's website, advertisements, documentation/instructional material, customer support, application and feature descriptions, and in-application instructions. BBVA has intentionally aided and encouraged third parties, including its end users, to use BBVA Mobile Deposit in the United States in a manner that it knows would infringe or have a high probability of infringing the '779 Patent, with the specific intent that those performing the acts infringe the '779 Patent.

96. BBVA is contributorily infringing the '779 Patent in violation of 35 U.S.C. § 271(c), by selling, offering to sell, and/or importing into the United States, and/or in violation of 35 U.S.C. § 271(f)(2), by supplying or causing to be supplied in or from the United States, BBVA Mobile Deposit for use in infringing the '779 Patent, constituting a material part of the invention, knowing BBVA Mobile Deposit to be especially made or especially adapted for use in infringing the '779 Patent. BBVA Mobile Deposit is not a staple article or commodity of commerce suitable for substantial non-infringing use.

97. As a result of BBVA's infringement of the '779 Patent, USAA has been damaged. In addition, BBVA's infringing acts and practices have caused and are causing immediate and irreparable harm to USAA. USAA is entitled to recover for damages sustained as a result of BBVA's wrongful acts in an amount yet to be determined and to receive such other and further relief, including equitable relief, as this Court deems just and proper.

98. USAA is further informed, and on this basis alleges, that BBVA's infringement of the '779 Patent has been and continues to be deliberate and willful, and, therefore, this is an exceptional case warranting an award of enhanced damages for up to three times the actual damages awarded and attorney's fees to USAA pursuant to 35 U.S.C. §§ 284-285. As discussed above,

BBVA has had knowledge of the ’779 Patent and its infringement thereof, and yet has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for USAA’s patent rights.

## VIII. FIFTH CLAIM FOR RELIEF – ’605 PATENT

99. USAA re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

100. The ’605 Patent, entitled “Digital camera processing system” was duly and legally issued on July 3, 2018. A true and correct copy of the ’605 Patent is attached as Exhibit E.

101. USAA owns by assignment the entire right, title, and interest in and to the ’605 Patent, including the exclusive right to seek damages for past, current, and future infringement thereof.

102. USAA is informed and believes, and on this basis alleges, that BBVA, agents of BBVA, and/or third parties acting under BBVA’s direction and control, have committed and continue to commit acts of direct infringement of one or more claims of the ’605 Patent literally and/or under the doctrine of equivalents, by making, using, selling, offering to sell and/or importing into the United States, BBVA Mobile Deposit. Further, BBVA controls the infringing system as a whole and obtains benefits from it. Indeed, BBVA requires users to use the infringing system in order to deposit checks to their BBVA account via a mobile device, and provides terms and conditions governing their use.

103. For example, the BBVA Mobile Deposit system through which BBVA receives deposits includes a portable or mobile device that includes a downloaded software or app that controls or works with a digital camera. This is illustrated, for example, in the following illustrative images from BBVA’s website and marketing materials.

OVERVIEW

### Deposit checks whenever, wherever

No more driving to the branch, waiting in line, or running to the ATM. Mobile Check Deposit allows you to quickly and easily deposit checks with your mobile phone. You don't even have to leave your house.*

Available for iPhone® and Android™

**Download App**

Available on the App Store

ANDROID APP ON Google play




## Skip your next trip to the ATM.

Deposit Treasury checks using the BBVA Mobile Banking App. Download or update your Mobile App today.

HOW TO MAKE A MOBILE DEPOSIT

### Securely deposit a check directly into your account in 4 easy steps:

1. Sign in to the BBVA Mobile Banking App
2. Tap the three lines in the upper right hand corner and select 'Deposit Checks' from the Main Menu
3. Follow the instructions on how to enter deposit information and how to take a picture of the front and back of your check.
4. You may also deposit multiple checks in a single deposit session, just as if you were at an ATM. Simply take a photo of the front and back of each check as instructed.



104. Additionally, BBVA Mobile Deposit asks the customer to engage in an authentication process. This is illustrated, for example, in BBVA's marketing materials, the following illustrative image from its website, and the following screenshot from BBVA's Mobile Deposit application.



HOW TO GET STARTED WITH MOBILE BANKING

1. To take advantage of the BBVA Mobile Banking App you need to be a BBVA customer. If you're not a BBVA customer, we make it easy to find the right **checking account** for you.
2. Download the app for your **mobile device** from the App Store (available on iOS and Android devices).
3. Activate your app. You will need to enroll in Online Banking–it's easy to do. **Learn more**.
4. To utilize your new Mobile Banking features, all you have to do is log in using your app.



105. As another example, BBVA Mobile Deposit uses the camera in the personal or mobile device to provide remote check depositing functionality.



106. As another example, BBVA Mobile Deposit receives, from the user, an indication of the amount of the check.




107. A further example is that BBVA Mobile Deposit instructs the user to place the check in front of the digital camera, displays an instruction to assist with the capture, assists the user as to an orientation for capturing the electronic images of the check, and have the digital camera capture electronic images of front and back sides of the check. This is depicted, for example, in the below screenshots from BBVA's Mobile Deposit application.


Cancel
Check Front
Move closer to check
On
powered by Mitek


Cancel
Check Front
Use check front
On
powered by Mitek


Cancel
Check Front
Reduce angle of check
On
powered by Mitek







108. In addition, BBVA Mobile Deposit presents the electronic images of the check to the user after the capture.






109. As another example, BBVA Mobile Deposit causes the mobile device to confirm that the mobile check deposit can go forward after performing OCR on the check to determine the amount of the check and comparing the determined amount to the amount entered by the user. For example, if the customer-entered amount and the OCR-determined amount do not match, the BBVA Mobile Deposit application will display an error message stating: “The amount you entered did not match the amount detected. Please re-enter amount and retake photo.”




110. BBVA Mobile Deposit also causes the mobile device to confirm that the mobile check deposit can go forward after reading a MICR line of the check. For example, if BBVA Mobile Deposit is unable to optically read the MICR line, it displays an error message stating "Cannot read account data on check. Please retake photo. Ensure Lighting, focus and prevent shadows over the check."




111. BBVA also is inducing infringement of the ’605 Patent, in violation of 35 U.S.C. § 271(b), including by knowingly encouraging or aiding third parties to make, use, sell or offer to sell BBVA Mobile Deposit in the United States, or to import BBVA Mobile Deposit into the United States, and/or in violation of 35 U.S.C. § 271(f)(1), by supplying or causing to be supplied BBVA Mobile Deposit in or from the United States, without license or authority from USAA, with knowledge of or willful blindness to the fact that BBVA’s actions will induce others to directly

infringe the ’605 Patent. BBVA actively encourages, directs, and controls third parties, including its end users, to make and/or use BBVA Mobile Deposit in an infringing manner, including through BBVA’s website, advertisements, documentation/instructional material, customer support, application and feature descriptions, and in-application instructions. BBVA has intentionally aided and encouraged third parties, including its end users, to use BBVA Mobile Deposit in the United States in a manner that it knows would infringe or have a high probability of infringing the ’605 Patent, with the specific intent that those performing the acts infringe the ’605 Patent.

112. BBVA is contributorily infringing the ’605 Patent in violation of 35 U.S.C. § 271(c), by selling, offering to sell, and/or importing into the United States, and/or in violation of 35 U.S.C. § 271(f)(2), by supplying or causing to be supplied in or from the United States, BBVA Mobile Deposit for use in infringing the ’605 Patent, constituting a material part of the invention, knowing BBVA Mobile Deposit to be especially made or especially adapted for use in infringing the ’605 Patent. BBVA Mobile Deposit is not a staple article or commodity of commerce suitable for substantial non-infringing use.

113. As a result of BBVA’s infringement of the ’605 Patent, USAA has been damaged. In addition, BBVA’s infringing acts and practices have caused and are causing immediate and irreparable harm to USAA. USAA is entitled to recover for damages sustained as a result of BBVA’s wrongful acts in an amount yet to be determined and to receive such other and further relief, including equitable relief, as this Court deems just and proper.

114. USAA alleges that BBVA’s infringement of the ’605 Patent has been and continues to be deliberate and willful, and, therefore, this is an exceptional case warranting an award of enhanced damages for up to three times the actual damages awarded and attorney’s fees to USAA pursuant to 35 U.S.C. §§ 284-285. As discussed above, BBVA has had knowledge of the ’605 Patent and its infringement thereof. Despite having this knowledge, BBVA has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for USAA’s patent rights.

## IX. SIXTH CLAIM FOR RELIEF – ’681 PATENT

115. USAA re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

116. The ’681 Patent, entitled “System and method for mobile check deposit” was duly and legally issued on July 3, 2018. A true and correct copy of the ’681 Patent is attached as Exhibit F.

117. USAA owns by assignment the entire right, title, and interest in and to the ’681 Patent, including the exclusive right to seek damages for past, current, and future infringement thereof.

118. USAA is informed and believes, and on this basis alleges, that BBVA, agents of BBVA, and/or third parties acting under BBVA’s direction and control, have committed and continue to commit acts of direct infringement of one or more claims of the ’681 Patent literally and/or under the doctrine of equivalents, by making, using, selling, offering to sell and/or importing into the United States, BBVA Mobile Deposit. Further, BBVA controls the infringing system as a whole and obtains benefits from it. Indeed, BBVA requires users to use the infringing system in order to deposit checks to their BBVA account via a mobile device, and provides terms and conditions governing their use.

119. For example, the BBVA Mobile Deposit system through which BBVA receives






deposits includes a portable or mobile device that includes a downloaded software or app that controls or works with a digital camera. This is illustrated, for example, in the following illustrative




images from BBVA's website and marketing materials.

120. Additionally, BBVA Mobile Deposit asks the customer to engage in an authentication process. This is illustrated, for example, in BBVA's marketing materials, the following illustrative image from its website, and the following screenshot from BBVA's Mobile Deposit application.






121. As another example, BBVA Mobile Deposit uses the camera in the personal or mobile device to provide remote check depositing functionality.



122. As another example, BBVA Mobile Deposit receives, from the user, an indication of the amount of the check.




123. A further example is that BBVA Mobile Deposit instructs the user to have the digital camera capture electronic images of front and back sides of a check, displays graphical illustrations to assist the user, and gives instructions in placing the digital camera at a proper distance away from the check for the capture.


Cancel
Check Front
?
Move closer to check
On
powered by Mitek


Cancel
Check Front
?
Use check front
On
powered by Mitek


Cancel
Check Front
?
Reduce angle of check
On
powered by Mitek







124. In addition, BBVA Mobile Deposit presents the electronic images of the check to the user after the capture.






125. As another example, BBVA Mobile Deposit causes the mobile device to confirm that the mobile check deposit can go forward after performing OCR on the check to determine the amount of the check and comparing the determined amount to the amount entered by the user. For example, if the customer-entered amount and the OCR-determined amount do not match, the BBVA Mobile Deposit application will display an error message stating: “The amount you entered did not match the amount detected. Please re-enter amount and retake photo.”




126. BBVA Mobile Deposit also causes the mobile device to confirm that the mobile check deposit can go forward after reading a MICR line of the check. For example, if BBVA Mobile Deposit is unable to optically read the MICR line, it displays an error message stating "Cannot read account data on check. Please retake photo. Ensure Lighting, focus and prevent shadows over the check."




127. BBVA also is inducing infringement of the '681 Patent, in violation of 35 U.S.C. § 271(b), including by knowingly encouraging or aiding third parties to make, use, sell or offer to sell BBVA Mobile Deposit in the United States, or to import BBVA Mobile Deposit into the United States, and/or in violation of 35 U.S.C. § 271(f)(1), by supplying or causing to be supplied BBVA Mobile Deposit in or from the United States, without license or authority from USAA, with knowledge of or willful blindness to the fact that BBVA's actions will induce others to directly infringe the '681 Patent. BBVA actively encourages, directs, and controls third parties, including its end users, to make and/or use BBVA Mobile Deposit in an infringing manner, including through

BBVA's website, advertisements, documentation/instructional material, customer support, application and feature descriptions, and in-application instructions. BBVA has intentionally aided and encouraged third parties, including its end users, to use BBVA Mobile Deposit in the United States in a manner that it knows would infringe or have a high probability of infringing the '681 Patent, with the specific intent that those performing the acts infringe the '681 Patent.

128. BBVA is contributorily infringing the '681 Patent in violation of 35 U.S.C. § 271(c), by selling, offering to sell, and/or importing into the United States, and/or in violation of 35 U.S.C. § 271(f)(2), by supplying or causing to be supplied in or from the United States, BBVA Mobile Deposit for use in infringing the '681 Patent, constituting a material part of the invention, knowing BBVA Mobile Deposit to be especially made or especially adapted for use in infringing the '681 Patent. BBVA Mobile Deposit is not a staple article or commodity of commerce suitable for substantial non-infringing use.

129. As a result of BBVA's infringement of the '681 Patent, USAA has been damaged. In addition, BBVA's infringing acts and practices have caused and are causing immediate and irreparable harm to USAA. USAA is entitled to recover for damages sustained as a result of BBVA's wrongful acts in an amount yet to be determined and to receive such other and further relief, including equitable relief, as this Court deems just and proper.

130. USAA alleges that BBVA's infringement of the '681 Patent has been and continues to be deliberate and willful, and, therefore, this is an exceptional case warranting an award of enhanced damages for up to three times the actual damages awarded and attorney's fees to USAA pursuant to 35 U.S.C. §§ 284-285. As discussed above, BBVA has had knowledge of the '681 Patent and its infringement thereof. Despite having this knowledge, BBVA has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for USAA's patent rights.

## X. <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, USAA prays for judgment against BBVA as follows:

A. That BBVA has infringed, and continue to infringe, each of the USAA Patents;

B. That each claim of each of the USAA Patents is valid and enforceable;

C. That BBVA pay damages adequate to compensate USAA for its infringement, together with interest and costs under 35 U.S.C. § 284;

D. That BBVA be ordered to pay pre-judgment and post-judgment interest on the damages assessed;

E. That BBVA be ordered to pay supplemental damages to USAA, including interest, with an accounting, as needed;

F. That BBVA's infringement is willful and that the damages awarded to USAA should be enhanced up to three times the actual damages awarded;

G. That USAA be awarded damages for its costs, disbursements, expert witness fees, and attorneys' fees and costs incurred in prosecution this action, with interest, including damages for an exceptional case pursuant to 35 U.S.C. § 285 and as otherwise provided by law; and

H. That USAA be awarded such other and further relief, including injunctive and equitable relief, as this Court deems just and proper.

## XI. DEMAND FOR JURY TRIAL

131. Pursuant to Federal Rule of Civil Procedure 38(b), USAA hereby demands a trial by jury on all issues triable to a jury.

Dated: August 16, 2021

Respectfully submitted,

**PARKER, BUNT & AINSWORTH, P.C.**

*/s/ Robert Christopher Bunt*
Robert Christopher Bunt
Texas State Bar No. 00787165
100 E. Ferguson Suite 418
Tyler, Texas 75702
Tel. (903) 531-3535
rcbunt@pbatyler.com

**Attorneys for Plaintiff United Services Automobile Association (USAA)**

Co-Counsel:

**IRELL & MANELLA LLP**

Jason Sheasby (CA #205455)
Lisa S. Glasser (CA #223406)
Rebecca Carson (CA #254105)
Anthony Rowles (CA #301209)
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel. (310) 277-1010
Fax (310) 203-7199
jsheasby@irell.com
lglasser@irell.com
rcarson@irell.com
trowles@irell.com